IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DERRICK ROYSTER,            )
        Plaintiff      )
                            )   C.A. No. 07-228 Erie
    v.                      )
                            )   **District Judge McLaughlin**
THE UNITED STATES OF AMERICA, )   **Magistrate Judge Baxter**
        Defendant.     )


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.    RECOMMENDATION**

It is respectfully recommended that United States' motion for summary judgment [Document # 53] be granted.


**II.   REPORT**

    **A.    Procedural History**

On or about August 23, 2007, Plaintiff Derrick Royster, an inmate formerly incarcerated[1] at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"), filed this *pro se* action pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 2671, et seq., against Defendant United States of America ("United States"). He subsequently filed an amended complaint containing identical factual allegations, but modifying his causes of action, on October 24, 2007. [Document # 7].

Plaintiff alleges that he was infected with "heavy growth" methicillin resistant staphylcoccus aureus ("MRSA") while he was incarcerated at FCI-McKean. (Complaint at ¶ 8). Plaintiff claims that the infection either resulted from, or was exacerbated by, the fact that washers and dryers were removed from FCI-McKean's housing units by Warden James

---

[1] Plaintiff is currently incarcerated at the Federal Correctional Institution at Gilmer in Glenville, West Virginia.

Sherman "as retaliation and punishment for a planned inmate 'food-strike.'" (Id. at ¶ 14). Without washers, Plaintiff claims that prisoners were forced to wash their clothes in buckets and to dry them on hand-rails along the stairs. (Id. at ¶ 15). He claims further that the washers in the prisoner laundry offered an unsanitary alternative because the water temperature in the washing machines was below 180 degrees. (Id. at ¶¶ 15-16).

As a result, Plaintiff claims that the United States' employees "created an unsafe environment that posed unreasonable risk of serious damage to Plaintiff's health and safety," and "have and continue to maintain unsafe conditions that pose an unreasonable risk of serious damage to Plaintiff's future health." (Id. at ¶ 25, 27; Amended Complaint at ¶ 23, 27). In addition, Plaintiff claims that the United States' employees "adopted a policy or custom of deliberate indifference to Plaintiff's serious medical need, and failed to act reasonably, but instead acted in reckless disregard of proper procedure, and as a result caused Plaintiff prolonged illness and suffering." (Amended Complaint at ¶ 25).

On April 15, 2008, the United States filed a motion to dismiss, or in the alternative, motion for summary judgment, claiming that this Court does not have subject matter jurisdiction to consider Plaintiff's Complaint due to Plaintiff's failure to timely exhaust his administrative remedies as required by the FTCA. [Document # 15]. On December 2, 2008, this Court issued a Report and Recommendation recommending that the United States' motion be granted and this case be dismissed. [Document # 29]; however, by Memorandum Order dated January 5, 2009, District Judge Sean J. McLaughlin declined to adopt this Court's recommendation and denied the United States' motion, finding that "on the present record there is an issue of fact as to when the Plaintiff knew or reasonably should have known that the cause of the MRSA infection was the removal of the washing machines. (Document # 32 at p. 2)(emphasis in the original).

The parties have since conducted limited discovery on the timeliness issue, and the United States has now filed a motion for summary judgment, and brief in support thereof [Document ## 53, 54], arguing that: (i) Plaintiff's complaint should be dismissed because he failed to timely file an administrative tort claim; (ii) Plaintiff's claim regarding the removal of the laundry machines should be dismissed pursuant to the FTCA's discretionary function

2

exception; and (iii) Plaintiff's claim based upon alleged inadequate medical treatment should be dismissed because he cannot establish a prima facie case of medical malpractice. Plaintiff has filed a brief in opposition to the United States' motion. [Document # 63]. This matter is now ripe for consideration.

### B.   Relevant Factual History

Between February 2004 and April 2005, FCI McKean's Health Services Administrator, Rodney Smith ("Smith"), conducted "Town Hall" meetings to educate inmates about a recent outbreak of the MRSA virus at the institution. (See Declaration of Rodney Smith attached as Document 5 to Document # 54 ("Smith Declaration"), at ¶¶ 4-5). During these meetings, Smith discussed the extent and etiology of the MRSA virus, and educated inmates on how the virus was transmitted and precautions they could take to prevent further spread of the virus. (Smith Declaration at ¶ 5). In addition, Smith posted MRSA fact sheets in each of FCI-McKean's housing units during the period from February 2004 to April 2005. (Id. at ¶ 6).

In the meantime, on February 10, 2005, the inmates at FCI-McKean initiated a food strike, as a result of which the institution was placed on lockdown status from February 10, 2005 through February 17, 2005, and again from February 22, 2005 through March 28, 2005. (See Declaration of James F. Sherman, former Warden at FCI-McKean, attached as Document 6 to Document # 54 ("Sherman Declaration"), at ¶¶ 6-7). During the lockdown, FCI-McKean's Executive Staff directed that laundry machines, weights and pool tables be removed from the housing units. (Sherman Declaration at ¶ 8). Inmates were then advised that all laundry would be done by the institution's laundry services. A new laundry schedule was then prepared and inmates were advised of new laundry procedures to be conducted during lockdown. (Id. at ¶ 9). During the lockdown, inmates were not authorized to handwash their laundry in the housing units or to air-dry their clothes on handrails. (Id. at ¶ 10).

In April 2005, Plaintiff began to experience pain and discomfort from an "unusual skin irritation." (Complaint at ¶ 5). On April 23, 2005, Plaintiff reported to FCI-McKean's Health Services Department ("Health Services") seeking diagnosis and treatment of the skin irritation,

3

at which time he was assessed with an abscess and a culture sample was taken and sent to a lab for testing. (Id. at ¶ 6; Declaration of Mack Bonner, M.D., Clinical Director at FCC-Butner ("Bonner Declaration"), attached as Document 2 to Document # 54, at ¶ 3a). On April 29, 2005, Health Services received a lab report on Plaintiff's culture sample, which indicated that Plaintiff was infected with "heavy growth" MRSA. (Complaint at ¶ 8; Bonner Declaration at ¶ 3c). On May 2, 2005, Plaintiff returned to Health Services, at which time he was assessed with MRSA, educated about the condition, and prescribed fourteen-day supplies of Bactrim and Rifampin. (Bonner Declaration at ¶ 3d).

On July 11, 2005, Plaintiff was seen in emergency triage complaining about abscesses on his buttocks, for which he was prescribed Keflex and told to return as needed. (Bonner Declaration at ¶ 3e). Plaintiff returned to Health Services on August 15, 2005, complaining of painful abscesses on his buttocks and groin area. He was assessed with furundes, rule out chronic furundes, rule out MRSA, for which he was told to apply hot/warm compresses 2-3 times a day, and was prescribed a ten day supply of Bactrim and Tylenol. (Bonner Declaration at ¶ 3f).

On November 3, 2005, Plaintiff reported to Health Services with abscesses on the top of his head and right thigh. He was assessed with infected wounds, from which a culture was taken, and was prescribed a 14-day supply of Bactrim and Bacitracin/Zinc ointment. (Complaint at ¶ 10; Bonner Declaration at ¶ 3g). On November 8, 2005, it was noted that the wound culture tested positive for MRSA. (Bonner Declaration at ¶ 3h). Plaintiff's abscesses on his head and right thigh were re-checked on November 11, 2005, at which time it was noted that the abscesses were resolving and Plaintiff was told to finish the Bactrim and to return if he experienced problems. (Bonner Declaration at ¶ 3i).

On June 14, 2006, Plaintiff reported to FCI-McKean's chronic care clinic complaining about sores on his left leg. On examination, two areas of abscesses were noted on Plaintiff's lower left leg, for which he was prescribed a 14-day supply of Bactrim. (Bonner Declaration at ¶ 3j). Plaintiff returned to Health Services on September 14, 2006, complaining about chronic abscesses on his thighs. Plaintiff was assessed with recurrent abscesses secondary to interigo

(inflammation of the top layers of skin due to moisture, bacteria, yeast, or fungus in the folds of the skin) and obesity, and was prescribed a 14-day supply of Keflex and Bacitracin ointment. It was also noted that no wound culture was taken because staff was unable to get a sample. (Bonner Declaration at ¶ 3o). Plaintiff claims that the "infection and lesions on his body ... did not clear up until late in November 2006." (Complaint at ¶ 12).

Seeking compensation for the pain and suffering he experienced from the MRSA infection he contracted at FCI-McKean, Plaintiff filed an Administrative Tort Claim with the Federal Bureau of Prisons ("BOP"), which was dated April 23, 2007 (Complaint, Exhibit A); however, the Claim was not received by the BOP until May 4, 2007. On May 25, 2007, the BOP sent a letter to Plaintiff rejecting his Claim, stating that it was not filed within two years after the claim accrued. This action ensued.

### C. Subject Matter Jurisdiction and the Federal Tort Claims Act

The Federal Tort Claims Act (FTCA) grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment. See 28 U.S.C. § 2675(a). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674. The FTCA specifically requires an initial presentation of the claim to the appropriate federal agency and a final denial by the agency as a non-waivable prerequisite to the filing of the lawsuit. See Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995). This requirement is set forth in 28 U.S.C. § 2675(a)[2]:

---

[2]

Prior to 1996, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency. Because the vast majority of these claims were ultimately settled before trial, however, the Department of Justice proposed that Congress amend the FTCA to "requir[e] all claims to be presented to the appropriate agency for consideration and possible settlement before a court action could be instituted. This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage.... Since it is the one directly concerned, it can be expected that claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess., 3 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2515, 2517.

5

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Thus, presentation of an administrative claim in accordance with 28 U.S.C. § 2675(a) is "a jurisdictional requirement and an absolute prerequisite to maintaining a civil action against the government under the FTCA." Valenzuela v. Thrifty Rent-A-Car, 1995 WL 708109, at *3 (E.D.Pa. Nov. 20, 1995). See also McNeil v. United States, 508 U.S. 106 (1993)(FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies); Livera v. First Nat. State Bank, 879 F.2d 1186, 1194 (3d Cir. 1989)(Exhaustion of administrative remedies is a jurisdictional requirement that cannot be waived and must be strictly construed).

The time for filing an administrative claim under the FTCA is governed by 28 U.S.C. § 2401(b), which provides, in pertinent part:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....

Under Department of Justice regulations governing administrative tort claims,

> A claim shall be presented as required by 28 U.S.C. § 2401(b) **as of the date it is received by the appropriate agency**.

28 C.F.R. § 14.2 (emphasis added).

Here, the United States argues that Plaintiff failed to timely file his administrative tort claim because it was not received by the BOP within the two year statute of limitations prescribed by 28 U.S.C. § 2401(b). In particular, the United States argues that the latest date on which Plaintiff's claim may have accrued is May 2, 2005, the date on which Plaintiff was formally assessed with MRSA; however, Plaintiff's administrative tort claim was not "presented" until May 4, 2007, the date on which it was received by the BOP. In response, Plaintiff confirms that he tested positive for MRSA on April 29, 2005. Plaintiff also confirms

his claim that he was infected with the MRSA virus as a direct result of the removal of the washing machines from FCI-McKean's housing units during the lockdown in February and March 2005. Nevertheless, he argues that his administrative tort claim was filed on April 23, 2007, rather than May 4, 2007, because that was the date he signed and mailed it. (Document # 64, Plaintiff's "Traverse" at unnumbered p. 4). Thus, the Court is, once again, asked to resolve two questions to determine whether Plaintiff's claim is timely or time-barred: (i) when did Plaintiff's claim accrue for purposes of applying the FTCA's statute of limitations; and (ii) when was Plaintiff's claim "presented" to the BOP? These questions will be considered, in turn.

### 1.     Accrual of Claim

The determination of when a claim accrues within the meaning of 28 U.S.C. § 2401(b) involves an objective inquiry; asking not what the Plaintiff knew, but what a reasonable person should have known. Barren by Barren v. United States, 839 F.2d 987, 991 (3d Cir. 1988).

Here, the record indicates that a MRSA outbreak at FCI-McKean began in or around February 2004, and that numerous "town hall meetings" were conducted in the housing units to inform and educate inmates about the virus, from February 2004 through April 2005. In addition, MRSA fact sheets were posted in the housing units during the same time period. As a result, Plaintiff knew or should have known about the existing threat of the MRSA virus at the institution prior to and at the time Plaintiff discovered the first signs of his MRSA infection in April 2005. In addition, the removal of the laundry machines from the housing units, which, according to Plaintiff, allegedly caused his contraction of the MRSA virus, occurred during the lockdown at FCI-McKean from February 10 through February 17, 2005, and February 23 through March 28, 2005. Thus, the circumstances that allegedly led to Plaintiff's MRSA infection were also known to Plaintiff at the time he contracted the infection. In any event, Plaintiff makes no claim and presents no evidence that he discovered the "cause" of the infection (removal of laundry machines or otherwise) after being informed of his infection on May 2, 2005.

According to Plaintiff, the first signs of the infection were discovered by him in April 2005, when he began to experience pain and discomfort from an "unusual skin irritation." (Complaint at ¶ 5). He reported the skin condition to FCI-McKean's Health Services on April 23, 2005, at which time a culture sample was taken. (Id. at ¶ 6). On April 29, 2005, Health Services received a lab report indicating that Plaintiff was infected with "heavy growth" MRSA. (Id. at ¶ 8). According to medical records, Plaintiff was informed of this finding on May 2, 2005. (Bonner Declaration at ¶ 3d).

From the foregoing, it is clear that the latest date on which Plaintiff's claim may be found to have accrued is May 2, 2005 – the date on which he was assessed with MRSA. At that time, Plaintiff knew or should have known all of the facts necessary to file an administrative tort claim, including the presence of the infection and the alleged cause(s) of the infection. See United States v. Kubrick, 444 U.S. 111, 122 (1979)(holding that FTCA's statute of limitations barred action because plaintiff was aware of both his injury and the facts surrounding its causation more than two years prior to filing of tort claim). Plaintiff has not put forth any evidence that would support a finding that he actually discovered the presence of the infection or the cause of the infection at a later date, nor has he made any argument to such effect. Accordingly, this Court finds that Plaintiff's claim accrued, for purposes of the FTCA's statute of limitations, on or before May 2, 2005.

### 2.     Presentation of Claim

Plaintiff argues that his Administrative Tort Claim was filed with the BOP on April 23, 2007, the date on which the claim was signed and mailed. As a result, Plaintiff contends that the claim was timely. The United States counters that Plaintiff's claim was not "presented" to the BOP, for purposes of the FTCA's statute of limitations, until the claim was actually received by the BOP on May 4, 2007. However, neither party has addressed whether the "prison mailbox rule" would apply in determining when Plaintiff's tort claim was "presented" to the BOP. According to the prison mailbox rule, the date on which a prisoner transmits legal documents to prison authorities is considered the actual filing date. In this case, that date would be on or

about April 23, 2007, the handwritten date of Plaintiff's claim. If the rule applies, therefore, Plaintiff's claim would be deemed to have been timely "presented." A closer look at the application of the prison mailbox rule is, thus, essential to this Court's determination of whether Plaintiff's administrative tort claim was "presented" within the time period prescribed by the FTCA's statute of limitations.

The prison mailbox rule was crafted by the Supreme Court in Houston v. Lack, 487 U.S. 266 (1988), specifically for *pro se* prisoners. In doing so, the Supreme Court cited several policy considerations: (i) a *pro se* prisoner may only communicate with the district court through prison authorities; (ii) a tardy prisoner is not free to "walk" papers to the district court; and (iii) the prevention of an intentional delay in transmission by prison authorities. Houston, 487 U.S. at 274. The Court also noted the "well-developed procedures" at federal prisons that record the date and time of prisoner submissions, making reference to prison mail logs a "straightforward inquiry." Id. at 275.

Five years later, the Supreme Court considered the application of the prison mailbox rule in Fex v. Michigan, 507 U.S. 43 (1993). In Fex, the Court was asked to consider the application of the rule in the context of the Interstate Agreement on Detainers Act, 18 U.S.C.A.App. §§ 1-8 ("IAD"), under which a prisoner detained under the IAD may file a request for final disposition in the prosecuting state. If such a request is filed, the IAD provides for dismissal with prejudice if the prosecuting state fails to bring the prisoner to trial within 180 days of receiving the request. In Fex, the prosecuting state brought the prisoner to trial 196 days after he delivered his request to prison authorities, but only 177 days after the prosecutor received the request. The Supreme Court held that the prison mailbox rule did not protect the prisoner, focusing on the IAD's specific language: "[the detainee] shall be brought to trial within one hundred and eighty days after he *shall have caused to be delivered* to the prosecuting officer ... written notice of the place of his imprisonment and his request for final disposition ...." Fex, 507 U.S. at 45 n. 1, quoting 18 U.S.C.A. App. § 2, Art. III(a)(emphasis added). The Court concluded that this language meant the 180-day period could not begin to run until the prosecuting officer received the request for final disposition. In so holding, the Fex Court determined that, because under the

IAD the applicable limitations period specifically commenced after delivery to the prosecuting officer, the prison mailbox rule did not apply. Id. at 52.

In Longenette v. Krusing, 322 F.3d 758 (3d Cir. 2003), the Third Circuit Court observed that, although "[t]he line between Houston and Fex is a narrow one... [t]he distinguishing factor appears to be the specificity of the 'service' language in the statute at issue." Longenette, 322 F.3d at 762. In this regard, the Third Circuit found that, after Fex, "[t]he cases that have eschewed application of the prison mailbox rule involved statutory or regulatory schemes that clearly required actual receipt by a specific date." Id. at 764. Accordingly, in the context of an administrative forfeiture proceeding under the Tariff Act of 1930, 19 U.S.C.A. § 1608, 1609, the Third Circuit in Longenette held that "[b]ecause neither the statute nor the regulations require 'actual receipt,' Houston mandates the prison mailbox rule's applicability." Id. at 765.

Curiously, this Court has found only one Circuit Court that has addressed the specific issue of whether the prison mailbox rule applies in the context of filing an administrative tort claim under the FTCA. In Tapia-Ortiz v. Doe, 171 F.3d 150 (2nd Cir. 1999), the Second Circuit Court held, in somewhat conclusory fashion, that the prison mailbox rule applies to the filing of a tort claim under the FTCA because "we see no difference between the filing of a court action and the filing of an administrative claim." Tapia-Ortiz, 171 F.3d at 152. In so holding, however, the Second Circuit acknowledged that "Houston does not apply, of course, when there is a specific statutory regime to the contrary." Id. at n. 1, citing Fex.

With all due respect, it appears that our sister Circuit overlooked the specific language of 28 C.F.R. § 14.2(b), which provides: "[a] claim shall be presented as required by 28 U.S.C. § 2401(b) **as of the date it is received by the appropriate agency**" (emphasis added). An overwhelming majority of courts have recognized that this regulation requires actual receipt of an administrative tort claim by the appropriate agency, not mere mailing by the claimant. See, e.g., Moya v. United States, 35 F.3d 501, 504 (10th Cir. 1994)(holding that, under the FTCA, "a claim shall be deemed to have been presented when a Federal agency *receives* from a claimant [her] administrative notice of claim")(emphasis in original); Rhodes v. United States, 1993 WL

212495 at * 2 (4th Cir. June 15, 1993)("[m]ailing alone is not enough; there must be evidence of actual receipt); Willis v. United States, 1992 WL 180181 at * 2 (6th Cir. July 29, 1992)("[t]he mere mailing of documents does not constitute presentment within the meaning of 28 U.S.C. § 2401(b)"); Drazen v. United States, 762 F.2d 56, 58 (7th Cir. 1985)("the district court was quite right to hold that mailing is not presenting; there must be actual receipt"); Bailey v. United States, 642 F.2d 344, 346 (9th Cir. 1981)(mailing alone insufficient for presentment of claim). See also Vecchio v. United States, 2005 WL 2978699 at * 2-6 (S.D.N.Y. 2005)(actual receipt by agency is required); Murray v. United States, 644 F.Supp. 444, 445 (E.D.Pa. 1985)("mailing of an administrative claim is insufficient to satisfy the presentment requirement; 'a claim shall be deemed to have been presented when a federal agency *receives* from a claimant ... an executed Standard Form 95 ...,'")(emphasis in original).

Thus, in light of the common recognition that an administrative tort claim under the FTCA is not "presented" until it is actually received by the appropriate federal agency, this Court refuses to adopt the reasoning of the Second Circuit Court in Tapia-Ortiz and, instead, finds that, under Fex, the prison mailbox rule does not apply to the filing of an administrative tort claim under the FTCA. Applying this finding to the instant case, this Court concludes that Plaintiff's administrative tort claim was not "presented" to the BOP until it was actually received on May 4, 2007. Since this date is more than two years beyond the latest accrual date of May 2, 2005, Plaintiff has failed to timely exhaust his administrative remedies, and this case should be dismissed for lack of subject matter jurisdiction.

In so holding, this Court recognizes the harsh result that such a ruling imposes upon Plaintiff. Nevertheless, "[w]e should also have in mind that the [FTCA] waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended." Kubrick, 444 U.S. at 117.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that United States' motion for

summary judgment [Document # 53] be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
United States Magistrate Judge

Dated: February 12, 2010

cc:     The Honorable Sean J. McLaughlin
        United States District Judge